UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cr-00328-JMS-MJD |
| | ) | |
| ANDRECE TIGNER, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motions for Compassionate Release**

Defendant Andrece Tigner requests compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Dkts. 46, 50, 55. Mr. Tigner asks the Court to reduce his sentence to time served. *Id.* After Mr. Tigner's amended motion for compassionate release was ripe, the Court ordered the parties to supplement the record. Dkts. 68, 71. They have done so, dkts. 69, 70, 74, 75, 76, and Mr. Tigner's motions for compassionate release are ripe for decision. For the reasons stated below, Mr. Tigner's motions, dkts. [46], [50], and [55], are **granted**.

**I. Background**

In October 2021, Mr. Tigner pled guilty to one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Dkt. 42. In pleading guilty, Mr. Tigner stipulated that he kept a firearm in his residence and sold marijuana from the residence. Dkt. 26. He also stipulated that, when law enforcement searched his residence, they found multiple firearms and about two pounds of marijuana. *Id.* The Presentence Investigation Report ("PSR") shows that Mr. Tigner had three prior felony convictions: possession of cocaine in 2012; possession of a handgun without a license in 2018; and resisting arrest in 2018. Dkt. 30.

The PSR also shows that his work release was revoked in 2013 and that his probation was revoked in 2019 because he was arrested on charges of possessing and dealing multiple illegal drugs and tested positive for marijuana and opiates.  *Id.*

The Court accepted Mr. Tigner's plea, and he received an aggregate sentence of 60 months and one day in prison, representing a one-day sentence for the drug count and a consecutive 60-month sentence for the firearm count. *Id.* The 60-month sentence for the firearm count represented the mandatory minimum sentence for that charge. 18 U.S.C. § 924(c)(1)(A)(i) (eff. Dec. 18, 2018, to June 24, 2022).

The Court also imposed two years of supervised release. *Id.* According to the Bureau of Prisons ("BOP") website, Mr. Tigner's anticipated release date (with good-credit time included) is February 22, 2025—a little more than 20 months from now. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited June 5, 2023).

Mr. Tigner was diagnosed with sickle cell disease when he was a child and was frequently hospitalized when he experienced sickle cell crises. Dkt. 30 at 19-20.  He has received supplemental social security benefits since he was a child because of the condition. *Id.* At the time he was sentenced, he was experiencing sickle cell crises and going to the hospital to be treated about every two months. *Id.* at 20. He was treated with pain medication and heat packs. *Id*. He also indicated that he was supposed to receive blood transfusions every two to four months. *Id.* at 20-21. He had also been diagnosed with asthma and a heart condition. *Id.* at 20-21.

Mr. Tigner is now 31 years old. He is currently incarcerated at the U.S. Penitentiary in Terre Haute, Indiana ("USP Terre Haute"). The Federal Correctional Complex in Terre Haute is a Care Level 3 Medical Center. Dkt. 74 at 1-2. Care Level 3 is supposed to be equipped to manage inmates who are outpatients and have complex, and usually chronic, medical, or mental health

2

conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications. *Id.*

Since entering BOP custody, Mr. Tigner has continued to require frequent hospitalization for sickle cell crises and associated severe pain. *See generally* dkts 55-1, 66, 77-1. Recently, he has had to be hospitalized approximately once a month. As of December 2022, his pain was being treated with Tylenol and ibuprofen. Dkt. 75 at 54. In mid-December 2022, he was hospitalized again with a sickle cell crisis. *Id.* at 45. After he returned, medical records indicate that he was receiving generic Tylenol (acetaminophen) for pain. *Id.* On January 10, 2023, Mr. Tigner was still experiencing pain, so his pain medication was switched to Percocet, which is oxycodone combined with Tylenol. *Id.* at 37. Four days later, Mr. Tigner was sent to the emergency room with another sickle cell crisis. *Id.* at 34. As of February 6, 2023, Mr. Tigner was still reporting that he was experiencing intolerable pain. *Id.* at 28. A medical note dated February 8, 2023, indicates that Mr. Tigner was able to work and perform activities of daily living. *Id.* at 16. But Mr. Tigner was hospitalized again with another sickle cell crisis for several days on March 15, 2023. *Id.* at 8. According to a recent declaration from Mr. Tigner, he was released back to prison on April 28, 2023, after a ten day stay at Union Hospital. Dkt. 77-1. He states that over the weekend of May 20th, he suffered a flare-up but was told that nothing could be done until Monday. *Id.* Mr. Tigner further states that the treatment for his disease is typically a blood or bone marrow transfusion and the last time he received a transfusion, the IV was placed too close to his heart and he suffered serious complications. *Id.*

Although Mr. Tigner has struggled with sickle cell crises throughout his incarceration, he has earned his GED and completed a drug abuse education course. *Id.*; dkts. 69-2, 70-1. He has

maintained clear conduct for at least the last six months, dkt. 69-1 at 2, and appears to have been working as an orderly since September 2022[1], dkt. 69-1 at 1.

## II. Legal Standard

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet, under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that a court has broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

## III. Discussion

Mr. Tigner contends that his medical conditions constitute an extraordinary and compelling reason for release. Dkt. 55.[2] He further argues that a reduction of his sentence would be consistent with the sentencing factors in 18 U.S.C. § 3553. *Id.*

In response, the United States does not dispute that Mr. Tigner has exhausted his administrative remedies as required by § 3582(c)(1)(A). *See generally* dkt. 65. It contends,

---

[1] Mr. Tigner's Individualized Needs Plan lists his employment as "E1 ORD." Dkt. 69-1 at 1.

[2] Mr. Tigner also argues that the risk he faces if he contracts COVID-19 constitutes an extraordinary and compelling reason for release, dkt. 55, but the Court need not reach that argument because he has established extraordinary and compelling reasons without considering his risk from COVID-19.

however, that Mr. Tigner has not established extraordinary and compelling reasons for release because he is receiving adequate treatment for his sickle cell anemia. *Id.* It also argues that the § 3553 factors weigh against release and that Mr. Tigner would pose an unacceptable danger to the community.

### A.    *Extraordinary and Compelling Reasons*

The Court concludes that Mr. Tigner has shown extraordinary and compelling reasons warranting release in this case. As discussed above, Mr. Tigner is hospitalized approximately once a month with severe pain when he experiences a sickle cell crisis. Even taking narcotic drugs has not improved this cycle of hospitalizations. The Court recognizes that Mr. Tigner appears to be able to function relatively normally between crises and that the BOP has responded at times to Mr. Tigner's condition. But—regardless of the level of care that the BOP is providing—at this point, Mr. Tigner's pattern of hospitalizations due to sickle cell crises and associated severe pain is so frequent that he effectively cannot engage in self-care in the prison setting. Accordingly, the Court concludes that these facts establish extraordinary and compelling reasons warranting relief under § 3582(c)(1)(A)(i).

### B.    *Section 3553(a) Factors and Danger to the Community*

The United States also argues that the sentencing factors in § 3553(a) weigh against release and that Mr. Tigner would be a danger to the community if released, *see generally* dkt. 65, but the Court again disagrees. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>> **(2)** the need for the sentence imposed—

       **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

       **(B)** to afford adequate deterrence to criminal conduct;

       **(C)** to protect the public from further crimes of the defendant; and

       **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence[s] and the sentencing range established for--

       **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]

**(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As recognized above, Mr. Tigner's conduct in this case was serious, and he has a track record of felony convictions and several prior probation and community placement revocations. But Mr. Tigner has served nearly 60% of his sentence. The United States does not identify any notable disciplinary history while at the BOP and, according to his Individualized Needs plans, Mr. Tigner has had no infractions for at least the last six months. Mr. Tigner has also taken several classes and programs to better himself while in prison, helping to set him up for success upon release. He will also have familial support. Dkt. 55 at 12. While the BOP is providing medical care to Mr. Tigner, he has nevertheless continued to suffer from frequent and debilitating sickle cell attacks which affect his ability to provide self-care. The Court finds that any concerns that his sentence thus far is insufficient punishment for his crime and any concerns about protecting the public, can be addressed by imposing an additional 20-month period of supervised release—to be served on home detention—as outlined below. *See* 18 U.S.C. § 3582(c)(1)(A) ("the court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with

or without conditions that does not exceed the unserved portion of the original term of imprisonment").

Taking all the facts together, the Court finds that Mr. Tigner would not be a danger to the community if released under the supervision plan set forth below and the § 3553(a) factors weigh in favor of reducing Mr. Tigner's sentence to time served. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence). Under the facts presented by this case, keeping Mr. Tigner incarcerated any longer would be more than what is necessary to provide just punishment for his conviction.

## IV. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Tigner's sentence to time served, that Mr. Tigner does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from his term of imprisonment in this case is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Tigner's motions for compassionate release, dkts. [46], [50] and [55], and **ORDERS** that Mr. Tigner's sentence of imprisonment be reduced to **time served.** The Court also imposes an additional 20-month term of supervised release, bringing the total term of supervised release to **2 years and 20 months.** The terms of supervised release stated in the Judgment imposed on October 8, 2021, dkt. 42, shall remain the same, with the following addition: During the first **20 months** of supervised release following Mr. Tigner's release from prison he shall be monitored by GPS; he

may be restricted to his residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court-ordered obligations, or other activities as pre-approved by the probation officer.

This Order is stayed for up to **14 days**, to make appropriate travel arrangements and to ensure Mr. Tigner's safe release. The BOP shall release Mr. Tigner as soon as appropriate travel arrangements are made and it is safe for Mr. Tigner to travel. There shall be no delay in ensuring travel arrangements are made. If more than 14 days are needed to make appropriate travel arrangements and ensure Mr. Tigner's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

No later than **12:00 p.m. on June 12, 2023**, counsel for the United States is **ordered** to do the following: (1) transmit the contemporaneously filed AO248 Order to Mr. Tigner's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 Order has occurred.

**IT IS SO ORDERED.**

Date: 6/9/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel